# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TARA COOPER<br>*On behalf of the estate of Tricia Cooper*<br><br>v.<br><br>CORRECT CARE SOLUTIONS, ET AL. | CIVIL ACTION<br><br>NO. 18-4358 |
|---|---|

## MEMORANDUM RE: OUTSTANDING MOTIONS

**Baylson, J.**                                                                                            **March 15, 2019**

Plaintiff brings this claim on behalf of the estate of Tricia Cooper, decedent who committed suicide in the Luzerne Correctional Facility. In her complaint, she alleges claims against Defendants Correct Care Solutions, LLC, Luzerne County, Luzerne County Division of Corrections, Mark Rochovich, David C. Pedri, Karen Balucha, LPN, Nadia Dayaram, Mental Health Professional, Melissa Erickson, LPN, Joe Feistl, Mental Health Provider, Elizabeth Joyce, RN, Sumaira Khan, Provder, and Correctional Officer John Does. (Compl., ECF 1.) Plaintiff's complaint sets out the following claims.

- Under the Fourteenth Amendment, pursuant to § 1983, she brings claims for:
    - Failure to protect and denial of medical care against all Defendants;
    - Supervisor liability against Defendants Luzerne County, Luzerne County Division of Corrections, Rochovich and Pedri; and
    - Municipal liability against Defendants Luzerne County and Luzerne County Division of Corrections.
- Under Pennsylvania state law, she brings claims for:

1

- Wrongful death, survival action, and negligence against Defendants Correct Care Solutions, Rochovich, Pedri, Balucha, Dayaram, Erickson, Feistl, Joyce, Khan, and Correctional Officers John Does; and
- Vicarious liability for negligence and negligent hiring, retention, and supervision against Defendant Correct Care Solutions.

Defendants Correct Care Solutions LLC, Joyce, and Khan (hereinafter "Correct Care Defendants") have filed a partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (CC Mot. to Dismiss, ECF 5) and a Motion to Transfer Venue (CC Mot. to Transfer, ECF 6). Defendants Luzerne County, Luzerne County Division of Corrections, Rockovich, Pedri, and Balucha (hereinafter "Luzerne County Defendants") have filed a Motion to Dismiss pursuant to 28 U.S.C. § 1406(a), or alternatively, Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). (Luzerne Mot., ECF 12.)

For the reasons discussed below, we **GRANT** the Motion to Transfer. We therefore do not address the 12(b)(6) motion.

## I. Alleged Facts & Procedural History

Plaintiff alleges in her complaint that Cooper was arrested and taken to the Luzerne County Correctional Facility on or about July 15, 2017. (Compl. at ¶ 29.) Upon arrival, Cooper was assessed for mental health treatment and drug and alcohol abuse history. (Compl. at ¶ 30.)[1] The notes from that initial screening stated that Cooper "appeared overly anxious, afraid or angry, appeared to be feeling unusually embarrassed or ashamed, and was 'acting and/or talking in a strange manner.'" (Compl. at ¶ 31.) The intake assessment noted she had a history of recurrent depressive disorders, anxiety disorders, PTSD and bipolar disorders, and that she was

---

[1] Plaintiff does not address who performed this assessment in her Complaint.

prescribed and taking Prozac, Atarax, Lamictal and Methadone before her arrest. (Compl. at ¶ 32-33.) The screening notes were signed by Defendants Erikson and Joyce. (Compl. at ¶ 34.) Cooper was placed on standard suicide watch "due to the severity of her detox from alcohol and opiates." (Compl. at ¶ 35.) She was also prescribed "a number of medications to facilitate her detox"—Albuterol Sulfate, Meclizine, Loperamide, Acetaminophen, Thiamine HIC, and Chlordiazepocide. (Compl. at ¶ 36-37.) Both Defendants Joyce and Khan signed the medication order. (Compl. at ¶ 39-40.)

At a follow-up consultation on July 17, 2017, Cooper stated that she had consumed oxycodone, Vicodin, and suboxone on the day of arrest. (Compl. at ¶ 42.)[2] Cooper refused to answer whether she had any suicidal ideations during the follow-up, and was kept on standard suicide watch because "she continue[d] to exhibit severe symptoms of detox that alter[ed] her mood state." (Compl. at ¶ 44-45.) Cooper was eventually discharged from suicide watch on July 20, 2017 after denying suicidal thoughts or plans. (Compl. at ¶ 48.) Plaintiff asserts that the follow-up report and discharge report were "electronically signed by Defendant Dayaram, Mental Health Professional, on July 25, 2017 at 10:24 pm, hours after Ms. Cooper committed suicide." (Compl. at ¶ 46.)

Cooper was seen by a behavioral health psychiatric provider for an initial evaluation on July 21, 2017. (Compl. at ¶ 51.) Among other things, the report from that visit notes that she had been taken off of her medication regimen since she entered the facility, and that she had a suicide attempt in 2008. (Compl. at ¶ 52-56.) The notes also review her history of opiate, heroin, and alcohol addiction. (Compl. at ¶ 59-60.) Plaintiff asserts that "no follow-up questions were asked of Ms. Cooper regarding her suicidal history" and that her prior behavioral health records were

---

[2] Again, Plaintiff does not address who performed this follow-up visit in her Complaint.

not sought. (Compl. at ¶ 57-58.) She was prescribed Prozac, Lamictal, and Hydroxyzine after that evaluation. (Compl. at ¶ 53.)

On or about July 24, 2017, Cooper was found on the floor of her cell, allegedly having fallen from the top bunk. (Compl. at ¶ 66.) Although she was given ice for pain and x-rays were taken of her femur, Plaintiff alleges that Cooper was "never questioned about whether this fall from the top bunk may have been a suicide attempt." (Compl. at ¶ 70.)

The next day, on July 25, 2017, at approximately 6:00 p.m. Cooper hung herself in her cell. (Compl. at ¶ 75.) Defendant Correctional Officer John Doe performed chest compressions, used an automated external defibrillator and bag valve mask, and performed cardiopulmonary resuscitation ("CPR"), but Cooper was unresponsive. (Compl. at ¶ 76-78.) Cooper was transported to Willes-Barre General Hospital and was intubated and treated for intractable seizures. (Compl. at ¶ 84-87.) Cooper never regained consciousness and was pronounced dead on or about July 31, 2017. (Compl. at ¶ 91-92.)

Plaintiff filed her complaint on October 5, 2018. (Compl.) The Correct Care Defendants filed their Motion to Dismiss and Motion to Transfer Venue on November 14, 2018, and Plaintiff responded on December 18, 2018 (Resp. to CC Mot. to Dismiss, ECF 10; Resp to CC Mot. to Transfer, ECF 11.) Also on December 18, 2018, Luzerne Defendants filed their Motion to Dismiss and Transfer Venue (Luzerne Mot.) and the accompanying memorandum (Luzerne Mot. Memo., ECF 13.) Plaintiff responded to the Luzerne Defendants' motion on December 28, 2018 (Resp. to Luzerne Mot., ECF 14.)

**II.  Legal Standard**

In considering a motion to dismiss for improper venue under Rule 12(b)(3), the Court must generally accept as true the allegations in the Complaint, unless contradicted by defendant's

4

affidavits. See SMA Med. Labs. v. Advanced Clinical Lab. Sols., Inc., 2018 WL 3388325, at *1 (E.D. Pa. July 12, 2018) (DuBois, J.) (citing Holiday v. Bally's Park Place, Inc., 2007 WL 2600877, at *1 (E.D. Pa. Sep. 7, 2007). The movant bears the burden of demonstrating that venue is improper. Myers v. American Dental Ass'n, 695 F.2d 716, 724 (1982)

In cases where venue is proper, defendants may seek to transfer venue pursuant to 28 U.S.C. § 1404(a), which provides that a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The defendant bears the burden of establishing that a venue transfer is warranted under Section 1404(a). Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The Third Circuit has cautioned district courts that, "in ruling on [the] defendants' motion the plaintiff's choice of venue should not be lightly disturbed." Id. (internal quotations omitted); see Pro Spice, Inc. v. Omni Trade Grp., Inc., 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001) ("Although §1404(a) gives a district court the discretion to decide a motion on a case-by-case basis, these motions are not to be granted liberally."). In considering a motion to transfer under Section 1404(a), the court should consider, in addition to the three statutorily enumerated factors (convenience of parties, convenience of witnesses, and the interest of justice), "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara, 55 F.3d at 339.

### III. Discussion

We begin with a discussion of Correct Care Defendants and Luzerne County Defendants' Motions to Dismiss for improper venue and then discuss Defendants' Motion to Transfer Venue.

### 1. Motion to Dismiss for improper venue

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Defendants first argue that the Complaint should be dismissed based upon improper venue because a "medical professional liability action"[3] may only be brought in the county in which the cause of action arose under Pa. R. Civ. P. 1006 and 42 Pa.C.S.A. § 5101.1. (CC Mot. to Transfer at 4-7; Luzerne Mot. at 3-6.) Defendants contend that Plaintiff has only included the federal § 1983 claim to "subvert Rule 5101." (CC Mot. to Transfer at 7.)

Defendants assert that 42 Pa.C.S.A. § 5101.1 is substantive law and must be applied in federal court pursuant to the doctrine of Erie v. Tompkins, 304 U.S. 64 (1938). Defendants cite to a Western District of Pennsylvania case that provided insight into the legislative intent of § 5101.1, although it stopped short of holding that it is substantive law under Erie. Velazquez v. UPMC Bedford Mem'l Hosp., 328 F. Supp. 2d 549, 556 (W.D. Pa.), on reconsideration, 338 F. Supp. 2d 609 (W.D. Pa. 2004). In Velazquez, Judge Gibson explained that the Supreme Court of Pennsylvania "revised pertinent venue sections" to alleviate "unduly expanded reach and scope of venue" by "limiting venue to the location of the alleged negligent care." Velazquez, 328 F. Supp. 2d at 563 (citing Olshan v. Tenet Health System City Avenue, LLC, 849 A.2d 1214, 1218 (Pa. Super. 2004).

---

[3] A "medical professional liability action" is defined as "[a]ny claim seeking the recovery of damages or less from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should be provided." 42 Pa.C.S.A. § 5101.1

Plaintiff responds that she is not suing for medical malpractice and therefore Velazquez is not applicable. (Resp. to Transfer Mots., ECF 11 at 5.) Rather, Plaintiff asserts that she has asserted an "ordinary negligence" claim against Defendants, not medical malpractice claims that would require a certificate of merit under the Pennsylvania medical negligence statute. (Id.)

We are not required to apply § 5101.1 in this case. Unlike the court in Velazquez, which was sitting in diversity jurisdiction, we have subject matter jurisdiction over this case by nature of its federal question pursuant to 28 U.S.C. § 1331. As such, under the Rules of Decisions Act, federal procedural law applies to the case at bar. 28 U.S.C. § 1652. Additionally, Plaintiff has not asserted a claim for medical malpractice to which these Pennsylvania states would apply. Rather, the complaint is for ordinary negligence. Accordingly, we do not dismiss this claim under 28 U.S.C. § 1406(a).

### 2. Motion to Transfer to the Middle District of Pennsylvania

Defendants next argue that if we do not dismiss this case for lack of venue, it should be transferred to the Middle District of Pennsylvania "where the events that gave rise to Plaintiff's Complaint occurred exclusively…, where Plaintiff and the individual Defendants all reside and/or were employed…, and where the corporate Defendants all maintain principle places of business." (CC Mot. to Transfer at 7; Luzerne Mot. at 7.)

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action "to any other district or division where it might have been brought or to any district or division to which all parties have consented" "for the convenience of the parties and witnesses, in the interest of justice." § 1404(a) requires the court to engage in an "individualized, case-by-case consideration of convenience and fairness," taking into account the convenience to parties and witnesses, as

well as the interest of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

While it is ultimately up to the court's discretion, a transfer of venue "is not to be liberally granted." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation omitted). Plaintiff's choice in forum is the primary consideration under Section 1404(a) and it should not be lightly disturbed. Id. at 25. Although a plaintiff's choice of forum is typically given great deference, less weight is given "where the operative facts giving rise to the action occurred in another district and the plaintiff chooses a venue of which he is not a resident." Mullen v. Norfolk S. Ry. Co., No. 13-6348, 2014 WL 1370119, at *9 (E.D. Pa. Apr. 8, 2014) (Baylson, J.)

The burden of proof rests with the defendant to show that a transfer of venue under Section 1404(a) is warranted. Jumara, 55 F.3d at 879. As such, the motion to transfer must be supported with "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer." Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756-57 (3d Cir. 1973).

The Third Circuit has set forth a number of private and public factors for a court to consider in deciding whether to transfer venue, including: (i) the plaintiff's forum preference; (ii) the defendant's preference; (iii) whether the claim arose elsewhere; (iv) the convenience of the parties as indicated by their relative physical and financial condition; (v) the convenience of the witnesses to the extent that the witnesses may be unavailable for trial in one of the fora; (vi) the location of records to the extent that they could not be produced in the alternative forum; (vii) the enforceability of the judgment; (viii) practical considerations that could make the trial easy, expeditious, or inexpensive; (ix) the relative administrative difficulty in the two fora resulting

from court congestion; (x) the local interest in deciding controversies at home, (xi) the public policies of the fora; and (xii) the familiarity of the trial judge with applicable state law in diversity cases. Jumara, 55 F.3d at 879-80. This list is non-exhaustive. Id.

### a. Private interests

Defendants contend that private interests favor transfer to the Middle District of Pennsylvania because all parties reside in the Middle District and all events giving rise to the cause of action occurred in the Middle District. (CC Mot. to Transfer at 10; Luzerne Mot. at 10.) Defendants also assert that all witnesses, including administrators, employees, correctional officers and medical providers working within the Luzerne County Correctional Facility would be located within the Middle District. (Id.) They likewise argue that all documentary evidence would be located within the Middle District. (CC Mot. to Transfer at 11; Luzerne Mot. at 11.)

Plaintiff responds that the private interests favor her choice in forum because the relevant prison records and medical records are maintained electronically and therefore discovery will be easily accessible from the Eastern District, particularly where Plaintiff's and Correct Care Defendants' attorneys are in Philadelphia. (Resp. to Transfer Mot. at 7-8.) Plaintiff also contends that the Eastern District and Middle District are both so large that there is a high probability that witnesses will need to travel far regardless of where the case is tried. (Id. at 7-8.)

We are persuaded by Defendant that private interest supports transferring venue to the Middle District. First, all parties live in the Middle District and have no connection with the Eastern District. Moreover, witnesses would likely be located within the Middle District. Plaintiff's argument that this case may end up with a Middle District judge that is as far away from Luzerne County Correctional Facility as this court is not sufficient to overcome the fact that all relevant evidence and witnesses will likely be located within the Middle District.

9

### b. Public interests

Defendants next contend that the public interest favors transfer as the Middle District "has a local interest in resolving a claim that is based on acts or omissions occurring in its geographical jurisdiction, and involving residents of that District." (CC Mot. to Transfer at 12; Luzerne Mot. at 12.) Defendants also argue that the Middle District judges are familiar with litigation arising out of the Luzerne County Correctional Facility and therefore venue will "promote consistency in outcomes between factually similar cases." (Id.) Defendants additionally assert that more resources overall will be expended if the case is tried here in the Eastern District as the parties and witnesses will need to travel to the Eastern District. (Id.)

Plaintiff argues that the Middle District is "tall and wide, and many jurors from the EDPA are actually closer to Luzerne County than those from the MDPA." (Resp. to Transfer Mot. at 8-9.) She also contends that the Eastern District has a less congested docket than the Middle District, and points to the lack of supporting affidavits that would favor Defendant's assertion that more resources would be expended were the case tried in this district. (Id. at 8-10.)

The Middle District has a clear interest in litigating this case, which is primarily concerned with the conduct of officials and contractors within its boundaries. The community located within the Middle District also has an interest in deciding this case there. Although there is generally a presumption in favor of Plaintiff's choice of forum, Defendants have successfully overcome that presumption. We therefore will grant Defendants' motion to transfer venue under 28 U.S.C § 1404(a).

## IV. Conclusion

We grant Defendants' motion to transfer venue of this case. Accordingly, we decline to evaluate the merits of the Correct Care Defendants' motion to dismiss.

An appropriate order follows.

O:\CIVIL 18\18-4358 Cooper v Correct Care\18cv4358 Mot to Dismiss or Transfer Memo_v2.docx